UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MARIA ROSARIO,

    Plaintiff,

  v.

AMERICAN SOCIETY OF SAFETY
ENGINEERS,

    Defendant.

No. 12 CV 7465

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

Plaintiff Maria Rosario was employed by the defendant, the American Society of Safety Engineers. A co-worker, Judith Burl, felt discriminated against because she was black. Although Rosario did not believe that Burl had been a victim of discrimination, she reported Burl's concerns to management. An investigation (with some flaws) was conducted, the Society concluded that Rosario's report was groundless, and Rosario was fired. She brought this suit, contending that the Society unlawfully retaliated against her because she opposed racial discrimination. For the reasons discussed below, summary judgment in favor of the Society is granted.

**I.    Legal Standards**

Rosario brought suit under Title VII, 42 U.S.C. §§ 2000e *et seq.*, and 42 U.S.C. § 1981. Both statutes prohibit employers from retaliating against employees for opposing race discrimination. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). The substantive analysis under Title VII is generally the same as

under Section 1981. *Smith v. Bray*, 681 F.3d 888, 896 (7th Cir. 2012) (citing *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 403–04 (7th Cir. 2007), *aff'd*, 553 U.S. 442 (2008)). A plaintiff can prove retaliation using either the "direct" or the "indirect" method. For the direct method, Rosario must show that (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between the two. *Northington v. H & M Int'l*, 712 F.3d 1062, 1065 (7th Cir. 2013). For the indirect method, Rosario must show that she (1) engaged in protected activity; (2) suffered an adverse employment action; (3) met the employer's legitimate expectations; and (4) was treated worse than otherwise similarly situated employees who did not engage in protected activity. *Id*. If Rosario makes a *prima facie* showing on the indirect method, the burden shifts to the Society to offer a non-discriminatory reason for her termination. *O'Leary*, 657 F.3d at 635. The burden then shifts back to Rosario to show that the Society's proffered reason is pretextual, meaning it is a lie. *Id*.

## II.     The Facts[1]

The Society is a professional safety organization; its members consult on safety, health, and environmental issues in industry, government, and education. DSOF ¶ 1. Rosario was hired in August 1996. DSOF ¶ 4. In July 2010, a black

---

[1] Summary judgment is appropriate only if there is no genuine dispute as to any material fact, and the Society is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). I view the facts, and draw reasonable inferences from those facts, in the light most favorable to Rosario. Unless otherwise noted, the facts recited in this opinion are taken from the parties' Local Rule 56.1 statements. Rosario's response to the Society's statement of undisputed material facts (Dkt. 29) is cited as "DSOF" and the Society's response to Rosario's statement of additional facts (Dkt. 37) is cited as "PSOAF."

woman named Judith Burl joined the Society as a temporary worker. DSOF ¶ 6. Burl also applied for a permanent job but felt that, because of her race, she wouldn't be hired. DSOF ¶ 7; PSOAF ¶ 84. More than once she asked her supervisor, Bruce Sufranski, whether race would affect her chances. Dkt. 29-11 ¶ 13. Over lunch with Rosario, Burl said that (1) she believed she wouldn't be hired because she was black; and (2) she had expressed her concerns to Sufranski. PSOAF ¶ 59. Rosario didn't think that the Society discriminated on the basis of race, and she told Burl so. PSOAF ¶ 60. Burl didn't get the job. DSOF ¶ 7.

Later, Rosario attended a training session and learned that she had a duty to report harassment and discrimination. PSOAF ¶ 62. So she told management that (1) Burl felt discriminated against; (2) Rosario did not think that Burl had been discriminated against; and (3) Burl had raised her concerns with Sufranski. DSOF ¶¶ 14, 16, 21–24. Before Rosario's report, the Society had always considered her honest. PSOAF ¶ 7.

Sally Madden, the Human Resources Manager, was put in charge of investigating. PSOAF ¶ 75. That choice was questionable: Madden maintained a list of employees she considered "difficult," whom she warned new employees to avoid, and Rosario was on that list. PSOAF ¶¶ 42, 51, 59; Dkt. 29-10 ¶¶ 2–3, 5, 9; Dkt. 29-11 ¶¶ 5–7, 16, 20–21. When Rosario reported Burl's concerns of race discrimination, she also complained that Madden's list was a form of harassment or discrimination. DSOF ¶ 13. Fred Fortman, the Executive Director, asked Madden about the list and Madden falsely denied its existence. PSOAF ¶ 54. Fortman believed that Rosario

3

had a vendetta and led a campaign against Madden. PSOAF ¶¶ 76–77. Madden was arguably not the right person to investigate Rosario's report about Burl's concerns.

The investigation's first step was to question Sufranski—Burl's supervisor, to whom Burl had reported her concerns. Sufranski denied that Burl ever raised race discrimination concerns. DSOF ¶ 25. After that, despite the obvious conflict, Sufranski joined the investigation team. DSOF ¶¶ 26–31. Sufranski and Madden telephoned Burl and asked whether she had ever expressed concerns of race discrimination.[2] DSOF ¶ 27–29; PSOAF ¶ 81. Given that Burl had expressed her concerns to Sufranski directly, Burl did not view their questions as genuine. PSOAF ¶ 82. Instead, she believed that Madden and Sufranski wanted her to lie, by denying she ever raised such concerns. PSOAF ¶ 83. Burl felt intimidated and felt that she would not get a good job reference if she told the truth, so she capitulated and said that she had never expressed concerns of race discrimination. PSOAF ¶ 83; DSOF ¶ 30.

Rosario was told that the Society had investigated and had determined that she lied about Burl's concerns. DSOF ¶¶ 32–34. She was given a choice: resign or be terminated. DSOF ¶ 34. She refused to resign, said "if they choose to terminate me, fine," and walked out. DSOF ¶ 35. The Society sent her a letter, stating:

> Dear Maria, [p]er our meeting with Fred Fortman and Bruce Sufranski, this is to inform you that you are being terminated effective immediately. This termination is based on your unfounded accusation that the organization did not hire someone due to race.

---

[2] They also spoke to an employee named Trina Cotton, who denied hearing Burl's concerns of race discrimination. DSOF ¶ 26. That's consistent with Rosario's report, as she wasn't sure whether Burl had said anything to Cotton. DSOF ¶ 24.

4

> In addition, you communicated this information to two staff people. These statements are malicious, and we are terminating you for cause.

PSOAF ¶ 97.

Burl later wrote Rosario a letter, in which she apologized for having lied when she capitulated to Sufranski and Madden; but Rosario never forwarded the letter to the Society. DSOF ¶¶ 37–42. Instead, Rosario brought this suit, alleging that her termination was unlawful retaliation.

### III. Analysis

The Society does not argue that Rosario voluntarily resigned, so I assume she was fired and therefore suffered an adverse employment action. *Hobgood v. Ill. Gaming Bd.*, 731 F.3d 635, 643 (7th Cir. 2013). The Society argues that she was fired for making frivolous allegations, not for opposing race discrimination. Dkt. 25 at 5–7, 8–9. *See Hatmaker v. Mem'l Med. Ctr*, 619 F.3d 741, 745 (7th Cir. 2010) (stating that it is permissible to fire employees for making frivolous accusations). Rosario disputes that and argues that the Society's "investigation was a sham designed to justify terminating" her. Dkt. 28 at 18–20. Rosario may have raised enough of a dispute to take that question to a jury, given the potential biases of Madden and Sufranski and their heavy-handed phone call to Burl, described above.

But Rosario cannot take her claims to a jury if, as a matter of law, reporting Burl's concerns was not an activity that is protected by Title VII or Section 1981. An employee engages in protected activity by either: (1) filing a charge, testifying, assisting or participating in any manner in an investigation, proceeding, or hearing under Title VII or other employment statute; or (2) opposing an unlawful

5

employment practice. *Northington*, 712 F.3d at 1065. Rosario contends that her report is covered by the second clause, called the "opposition clause."[3] Dkt. 28 at 5.

The Society notes that Rosario did not subjectively believe that Burl was discriminated against. Dkt. 25 at 4–5. Rosario does not argue otherwise and indeed concedes that when she reported Burl's concerns, she "expressed her belief that she did not think [Burl's] allegation was true." Dkt. 28 at 8; *see also* DSOF ¶¶ 16, 23. Thus, the Society argues, Rosario did not "oppose" an unlawful employment practice. Dkt. 25 at 4–5. The Society is right: a plaintiff does not satisfy the opposition clause if she does not subjectively believe she is opposing unlawful conduct. *Tate v. Executive Mgmt Servs., Inc.*, 546 F.3d 528, 533 (7th Cir. 2008) ("Because Tate has failed to establish that he had a good faith belief that he was being sexually harassed, EMS is entitled to judgment as a matter of law.").[4]

Rosario asks me to "disregard" the Society's argument because (1) Burl believed that the Society's conduct was unlawful; (2) Rosario, while she disagreed with Burl, believed that Burl was sincere; and (3) the Society "ascribed Burl's

---

[3] Rosario concedes that her conduct is not covered by the first clause—called the "participation clause"—because the Seventh Circuit has held that that clause concerns only investigations, proceedings, or hearings before "an official body"; an employer's internal investigations don't count. *Hatmaker*, 619 F.3d at 746–47. *Hatmaker*, which did not involve claims under Section 1981, drew its rule from the text of Title VII. *Id*. Rosario has not argued that a different rule should apply to her Section 1981 claim.

[4] The Society relied on other Seventh Circuit cases stating that a subjective belief is required, including *O'Leary*, 657 F.3d at 631; *Hatmaker*, 619 F.3d at 747–48; and *Mattson v. Caterpillar, Inc.*, 359 F.3d 885, 889 (7th Cir. 2004). Dkt. 25 at 5; Dkt. 35 at 8. Rosario correctly notes that those cases involved claims that were also *objectively* unreasonable. Dkt. 28 at 10. But the language of those cases is nonetheless clear, *Tate* did not involve objectively unreasonable claims, and Rosario has not identified any case suggesting that a subjective belief is *not* required.

6

claims" to Rosario. Dkt. 28 at 6–9. But these points do not amount to Rosario subjectively believing that she was opposing unlawful conduct, which is what the law requires. Rosario has not identified a case—and I am not aware of one—in which a court held that these points (or any others) can substitute for the plaintiff's subjective belief that she was opposing unlawful conduct.

Rosario also makes a policy argument, urging that it "would fly in the face of the underlying policies of Title VII and Section 1981" to hold that her conduct was not protected activity. Dkt. 28 at 10–12. She argues that her conduct "is precisely the type of activity that Congress enacted Title VII and section 1981 to incentivize." *Id*. at 11. Her argument is undermined by her admission that "this is not a paradigmatic retaliation case—it rests on an atypical, if not unique, fact pattern." *Id*. at 10. In any event, notwithstanding Rosario's policy arguments, a person who reports discrimination against another person must subjectively believe the report in order to be opposing an unlawful employment practice. *See Young-Gibson v. Board of Education of the City of Chicago*, 558 Fed.Appx. 694, 699 (7th Cir. 2014) (nonprecedential). The prohibition against retaliation creates an incentive for employees to report honestly held beliefs, not rumors that are not believed.

## IV. Conclusion

Because Rosario did not believe that Burl was discriminated against, she did not "oppose" an unlawful employment practice when she informed management of Burl's concerns. She therefore did not engage in protected activity, and cannot

7

succeed under either the direct or indirect method of proof.[5] The Society may very well have overreacted to Rosario's report of Burl's concerns, but its reaction was not prohibited by Title VII or Section 1981. The Society's motion for summary judgment is granted.

ENTER:

/s/ Manish S. Shah

Manish S. Shah
United States District Judge

Date: 8/11/14

---

[5] I therefore do not address the other elements of the methods. *See, e.g.*, *Hamm v. Weyauwega Milk Prods.*, 332 F.3d 1058, 1065–66 (7th Cir. 2003) (affirming summary judgment because activity was not protected, without addressing other elements); *Hamner v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 224 F.3d 701, 706–08 (7th Cir. 2000) (same); *see also Williams v. Waste Mgmt. of Ill., Inc.*, 361 F.3d 1021, 1031–34 (7th Cir. 2004) (affirming summary judgment because employee did not suffer adverse employment action, without addressing other elements); *id.* at 1029 (affirming summary judgment on racial harassment claims based on fourth prong of employer liability test, where neither the district court nor the appellate court discussed the other prongs).